# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## MARY E. SWEAT, ADM'X, ETC. V. L. C. STINNETT.

April 22, 1946.

Record No. 3026.

Present, All the Justices.

·The opinion states the case.

*Israel Steingold,* for the plaintiff in error.

*L. Mercer Smith,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

L. C. Stinnett instituted this action against Mary E. Sweat, administratrix of O. W. Sweat, to recover $650. From the judgment entered on the verdict for plaintiff, defendant obtained this writ of error.

The evidence for plaintiff tends to show that, for several weeks prior to December 25, 1943, Sweat tried to borrow money from Stinnett; and that finally, on December 23, at

Worth Carter's service station, in the presence of his wife and Mrs. Carter, Stinnett lent Sweat $650. Sweat paid $37.50 of this amount to Mrs. Carter for an account he owed her. A few days later Sweat delivered to L. C. Stinnett a chattel mortgage on his furniture to secure the payment of the $650. On February 23, 1944, Sweat and his wife contemplated a sale of their furniture and asked L. C. Stinnett to release it from the lien of the chattel mortgage. He agreed to do this if Sweat would give him a check for $650 evidencing the amount of the loan, which Sweat did. Sweat requested Stinnett not to present the check to the bank for payment as he did not have the money and it would embarrass him to have the check dishonored. The check was never presented to the bank and the money was not repaid.

Sweat died on June 14, 1944, and his wife, Mary E. Sweat, qualified as administratrix. The evidence for defendant is to the effect that Mary E. Sweat did not know that her husband had borrowed $650 from plaintiff, and that there was no necessity for him to borrow money as, in November and December, 1943, he had earned $2,123.69 as commissions on sales. The widow admitted on cross-examination that her husband "ran around with other women and drank excessively all the time and that on the Christmas of 1943 she had to borrow $20.00 from a neighbor."

The evidence for plaintiff is positive that Sweat borrowed the money and later gave his check as evidence of the loan. The evidence for defendant is that she found no record of the loan in her husband's papers and that he had never told her about the transaction. It follows that the trial court committed no error in its refusal to sustain defendant's motion to set the verdict aside on the ground that it was not supported by the evidence.

There are three other assignments of error. The first is to the action of the court in refusing to admit in evidence a bank deposit book. This bank account was in the name of O. W. Sweat, Jr., who is an infant son of Mr. and Mrs. Sweat. While the trial court refused to admit the bank record of deposits, it did permit defendant to testify that her

husband kept the bank account in the name of his son and that it did not show a deposit of $650. The trial court was wrong in refusing to admit the record of deposits in evidence, but the fact that it did permit the witness to testify as to its contents renders this ruling harmless error.

The second assignment of error is based upon the refusal of the trial court to admit the testimony of Alvin V. Leake. The substance of the rejected evidence is that decedent requested the witness to accept, without consideration, his check for $750 and, if necessary, offer it in evidence as a *bona fide* debt in the event decedent's wife sued him for alimony. The witness stated that he refused to become a party to the contemplated fraud.

Defendant contends that this evidence was pertinent as it tended to show that decedent gave plaintiff a $650 check, without consideration, in an effort to defraud his wife. Defendant failed to produce any evidence tending to show that plaintiff knew decedent contemplated perpetrating any fraud upon his wife, or that he took any part in such a scheme. The alleged conversation between decedent and Leake was irrelevant to any transaction between plaintiff and decedent. There was no error in the trial court's refusal to permit this evidence to be introduced.

The third and last assignment of error is to the refusal of the trial court to grant a new trial on the ground of after-discovered evidence. The after-discovered evidence relied upon consisted of six cancelled checks signed by decedent, payable to Mary Carter, bearing different dates from November 28 to December 24, 1943, and totaling $79.96, purporting to have been given for cash and gas. These checks tend to impeach the testimony of Mary Carter on a collateral issue. In addition, the cancelled checks were in the possession of defendant, who, if she had exercised due diligence, could, and should, have produced them at the trial.

The judgment of the trial court is affirmed.

*Affirmed.*